1

2

3

4               UNITED STATES DISTRICT COURT

5              NORTHERN DISTRICT OF CALIFORNIA

6

7    SHONTE M JONES,                        Case No.  14-cv-05260-EMC

8                        Plaintiff,
                                            **ORDER GRANTING PLAINTIFF'S**
9          v.                               **MOTION FOR SUMMARY JUDGMENT**
                                            **AND REMANDING CASE TO**
10   CAROLYN W. COLVIN,                      **ADMINISTRATIVE LAW JUDGE**

11                       Defendant.         Docket No. 17

12                         I.    **INTRODUCTION**

13         Plaintiff Shonte M. Jones brings this action pursuant to 42 U.S.C. § 405(g), seeking

14   judicial review of a final decision by Defendant Carolyn W. Colvin, the Acting Commissioner of

15   the Social Security Administration, denying Jones' application for Supplemental Social Security

16   Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, 1383(f).  On

17   September 16, 2011, Jones applied for SSI benefits, alleging disability beginning on September 7,

18   1999.  Administrative Record ("AR") 11, 160.  She claimed debilitating pain in her neck, back,

19   shoulders, hip, knee, and head, as well as anxiety and post-traumatic stress disorder ("PTSD").

20   AR 254-55.  Her application was denied initially on August 16, 2002, and upon reconsideration on

21   October 3, 2012.  AR 11.  Jones timely filed a written request for hearing before an Administrative

22   Law Judge ("ALJ"), and appeared and testified at the hearing held on June 12, 2013.  AR 11.  The

23   ALJ concluded in a written decision that Jones was not disabled.  AR 11-17.  The Appeals Council

24   denied Jones' request for review, and so the ALJ's decision is the final decision of the

25   Commissioner of Social Security.  *See Brown-Hunter v. Colvin*, Case No. 13-15213, 2015 WL

26   4620123, at *3 (9th Cir. Aug. 4, 2015).

27         Jones brought this action on December 1, 2014, and moved for summary judgment on May

28   15, 2015.  Pl.'s Mot. at 1.  In her motion, Jones claims that the ALJ made three errors that require

reversal of the decision that Jones is not entitled to benefits, with a remand for a rehearing. Pl.'s Mot. at 2. Specifically, Jones argues that (1) the ALJ improperly rejected the agency examining physician Dr. Pon's opinion that Jones could reach occasionally; (2) the ALJ improperly rejected agency examining psychologist Dr. Dixit's opinions that Jones had mild-to-moderate limitations regarding stress, emotional stability, and interaction with the public; and (3) substantial evidence does not support the ALJ's as-actually-performed step-four decision. Pl.'s Mot at 2.

## II.   BACKGROUND

Jones was born in 1965, and was under fifty during the period the ALJ adjudicated. AR 160. She completed high school and has some vocational training. AR 28. In 2007 and 2008, Jones worked for the California League of Conservative Voters ("League"), phoning League members to garner their continuing support. AR 29, 174. She has not worked since then. AR 29.

Jones alleges chronic pain in her neck, back, shoulders, hip, knee, and head. AR 254-55. She was in two car accidents, one in 2002 and another in 2012, that she claims have exacerbated the pain. AR 28, 31, 255. She also alleges post-traumatic stress disorder ("PTSD") as a result of domestic violence that occurred throughout 2010 and 2011. AR 288, 291, 303, 306, 330, 462. She claims the trauma she suffered from the domestic violence has caused her to develop anxiety and depression, and has affected her ability to concentrate and be around people. AR 26, 38-40, 254, 277, 298-305, 330. Jones sought medical and psychological treatment for her ailments consistently. AR 254-256. However, she also missed several follow-up appointments with treating physicians and sought untimely refills for her medications. AR 421, 428.

On September 16, 2011, Jones filed a Title XVI application for SSI, alleging disability beginning September 7, 1999. AR 11. The claim was denied initially on August 16, 2002[1], and upon reconsideration on October 3, 2012. AR 11. Jones filed a written request for hearing on October 30, 2012. AR 11. She appeared and testified at a hearing held on June 12, 2013. AR 11. A vocational expert ("VE") also appeared at the hearing. AR 11.

Prior to the hearing, two agency doctors, Dr. Pon and Dr. Dixit, examined Jones for the

---

[1] This is what the AR reports. The Court assumes it was a typo, and it was actually denied initially on August 16, 2012.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

purpose of advising the ALJ on Jones' physical and mental RFC.  AR 331-333, 335-338.

On February 1, 2012, agency examining physician Dr. Calvin Pon reviewed Jones' medical history and performed a consultative orthopedic disability evaluation. AR 335-338.  He found that Jones had normal general appearance, normal gait with no ambulatory aid, and normal range of motion ("ROM") in the neck, and normal trunk and thoracolumbar spine ROM.  AR 336.  He found mild limitation in Jones' shoulders ("4/5 limited by pain"), but no limitations in her elbows, wrists, hands, or fine finger movements.  AR 336.  He also found mild limitations in her hips ("4-/5 limited by back pain") and knee flexors ("4/5 limited by pain").  AR 336.

Dr. Pon's functional capacity assessment of Jones was that

> [Jones] should be able to stand and/or walk for a total of 4 to 6 hours during an 8 hour workday.  She should be able to sit for a total of 6 hours during an 8 hour workday.  Stooping should be limited to occasionally.  Crouching, kneeling, and squatting should be limited to occasionally. She should be able to climb stairs occasionally to frequently.  Climbing ladders and crawling should be limited to occasionally.
>
> In spite of her complaint of bilateral shoulder pain, she should still be able to perform bilateral pushing and pulling arm/hand control frequently.  In spite of her complaint of bilateral lower extremity pain and numbness, and bilateral knee pain, she should still be able to perform bilateral pushing leg/foot control frequently.  She should be able to lift and carry frequently 10 lbs. and occasionally 20 lbs. Reaching bilaterally should be limited to occasionally, and there were some symptomatic limitations in active ROM of both shoulders as described.  There is no limitation in her ability to perform gross and fine manipulative tasks with both hands.

AR 337.

On January 23, 2012, agency examining physician Dr. Aparna Dixit reviewed Jones' medical history and performed a general mental status examination, Wechsler Adult Intelligence Scale-IV ("WAIS-IV"), Wechsler Memory Scale-IV ("WMS-IV"), and Bender Gestalt Test-II ("BG-II").  AR 330-334.  The WAIS-IV, WMS-IV, and BG-II results all placed Jones in the average range for intelligence, verbal comprehension, memory, perceptual reasoning, and processing speed.  AR 331-332.

Dr. Dixit's functional capacity assessment was that Jones had mild-moderate impairments in her ability to follow and remember complex instructions, to maintain adequate pace or

persistence to perform complex tasks, to withstand the stress of a routine work day, to maintain emotional stability/predictability, and to interact with the public on a regular basis. AR 332-333. Dr. Dixit further opined that Jones had mild impairments in her ability to maintain adequate attention/concentration, to adapt to changes in job routine, to interact appropriately with co-workers, and to perform tasks requiring mathematical skills. AR 332-333. Jones had no limitation in her ability to follow/remember simple instructions, to maintain adequate pace or persistence to perform simple repetitive tasks, or to communicate effectively with others. AR 332-333. Dr. Dixit diagnosed Jones with major depressive disorder not otherwise specified ("NOS"), rule-out ("R/O") PTSD, and cannabis abuse. AR 332.

After the agency examining physicians performed these examinations, two agency nonexamining physicians reviewed Jones' medical record and gave RFC recommendations in Jones' Initial Disability Determination Transmittal (dated February 28, 2012) and Reconsideration Disability Determination Transmittal (dated October 2, 2012). AR 59, 74. Both opined that "overhead reaching [should be] limited due to limited ROM and [bilateral] shoulder pain." AR 59, 74. They also both noted moderate limitations in Jones ability to carry out detailed instructions and interact appropriately with the general public. AR 61, 77. They also noted moderate limitation in her general ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 60-61, 76-77. The nonexamining physicians noted no other significant mental limitations.

At the June 12, 2013 hearing, Jones testified that she had pain in her hips, lower back, neck, shoulders, and right hand. AR 31, 32. She testified that she had difficulty sleeping. AR 34. She testified that she suffered from anxiety attacks, and was receiving mental health services and medication for anxiety. AR 35. As to her mental health, Jones testified that although she reads the Bible, she cannot concentrate on it for longer than thirty minutes at a time. AR 36, 38-40. She also testified that interaction with people triggers panic attacks, which last between fifteen minutes and one hour. AR 40-41.

The VE testified that Jones has past relevant work as an office clerk (DOT No. 209.562-

010, semi-skilled, SVP 3, light level of exertion), contribution solicitor (DOT No. 293.357-014, unskilled, SVP 2, light level of exertion), and telemarketer (DOT No. 299.357-014, semi-skilled, SVP 3, sedentary level of exertion).  AR 17, 41-44.  The ALJ began his examination of the VE with a hypothetical person with the same age, education, and work experience as Jones and RFC of light work; can lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk for six hours; sit for six hours; occasional postural activities; occasional overhead reaching bilaterally; and limited to simple, unskilled work.[2]  AR 44.  The VE testified that a person with that RFC could perform work as a contribution solicitor and telemarketer as actually performed. AR 44.  The ALJ's later hypotheticals placed further physical and mental limitations on the RFC. The VE testified that any further physical or mental limitations would preclude such a claimant from performing her past relevant work.  AR 44-47.  The VE did not testify that Jones worked a composite position or that she required the skills of both a contribution solicitor and telemarketer.

In his final adjudication, the ALJ found that Jones was not disabled and denied the claim on August 28, 2013.  AR 17.  In the decision, the ALJ applied the five-step sequential evaluation process[3] for determining whether an individual is disabled within the meaning of the Social Security Act.  AR 12-13, 20 C.F.R. § 404.1520(a).

At Step One, the ALJ found there was no evidence Jones had engaged in substantial gainful activity since September 16, 2011, the application date.  AR 13, 20 C.F.R. § 416.971 *et seq.*  At Step Two, the ALJ found that Jones had "the following severe impairments: post-traumatic stress disorder (PTSD), bilateral shoulder pain, and cervical lumbar pain."  AR 13, 20 C.F.R. §416.920(c).  At Step Three, the ALJ found that Jones did not have an impairment or combination of impairments that meet or medically equaled the severity of one of the listed

---

[2] This eventually was the ALJ's final RFC determination for Jones.  AR 14.

[3] The five-step sequential analysis examines (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's RFC, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work in the national economy.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see* 20 CFR §§ 404.1520(a), 416.920(a).

United States District Court
For the Northern District of California

impairments in 20 C.F.R. Part 404, Subpart B, Appendix 1.  AR 13, 20 C.F.R. § 416.920(d), 416.923, and 416.926.  Specifically, the ALJ noted that no physician had opined that Jones' physical ailments met or equaled any listing, and that the state agency physicians had opined that they did not meet the listing.  AR 13.  The ALJ further found that Jones' mental impairments did not satisfy the "paragraph B" criteria.  AR 13-14.

The ALJ noted Drs. Pon and Dixit's opinions on Jones' physical and mental limitations in his decision, but his final RFC determination matched those of the agency nonexamining physicians.  AR 14-16.  He did not perform any explicit balancing of the examining and nonexamining physicians' opinions.

The ALJ determined that Jones had the RFC to perform less than the full range of light work, as defined in 20 C.F.R. § 404.1567(b).  AR 14.  He determined Jones could lift and carry twenty pounds occasionally and ten pounds frequently, sit, stand, and walk up to six hours, and push/pull frequently.  AR 14.  He further found she "is limited to occasionally performing postural activities and *reaching overhead bilaterally*."  AR 14 (emphasis added).  Finally, for his assessment of Jones' mental limitations, he determined she was limited to simple, unskilled work as defined in 20 C.F.R. § 416.967(b).  AR 14.  Applying this RFC at Step Four, the ALJ found Jones was able to perform her past work as it was actually performed.  AR 17.  As such, the ALJ did not proceed to the Step 5 analysis.

Jones requested a review of the ALJ's decision by the Appeals Council, who denied the request on September 24, 2014.  AR 1-3.  The ALJ's decision is now the final decision of the Commissioner of Social Security.  On December 1, 2014, Jones filed this action seeking judicial review of the Commissioner's decision.  Pl.'s Mot. at 1.

### III.   DISCUSSION

There is no dispute that Jones' bilateral shoulder pain, cervical lumbar pain, and PTSD are "severe."  AR 13 (ALJ found that Jones "has the following severe impairments: post-traumatic stress disorder (PTSD), bilateral shoulder pain, and cervical lumbar pain.").  The only issues on appeal here are (1) whether the ALJ improperly rejected examining physician Dr. Pon's opinion that all reaching should be restricted to occasional; (2) whether the ALJ improperly rejected

1    agency examining psychologist Dr. Dixit's opinions that Jones had mild-to-moderate limitations

2    regarding stress, emotional stability, and interaction with the public; and (3) whether substantial

3    evidence supports the ALJ's as-actually-performed step-four decision assuming his RFC is

4    accurate.

5         The district court reviews the Commissioner's final decision under the substantial evidence

6    standard; the decision will be disturbed only if it is not supported by substantial evidence or is

7    based on legal error.  *See* 42 U.S.C. § 405(g); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir.

8    2007).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it

9    is such relevant evidence as a reasonable person might accept as adequate to support a

10   conclusion."  *Id.*  (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also*

11   *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  The standard is "extremely deferential" to

12   the ALJ, and requires affirmance of an agency's factual findings unless the evidence "compels a

13   contrary result."  *Monjaraz-Munoz v. I.N.S.*, 327 F.3d 892, 895 (9th Cir. 2003).  The court may

14   review only the reasons provided by the ALJ in the disability determination, and may not affirm

15   the ALJ on a ground upon which he did not rely.  *See Brown-Hunter*, 2015 WL 4620123 at *4;

16   *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

17   A.    ALJ's Determination of Occasional Overhead Reaching Limitation in Jones' RFC

18        Jones first contests the ALJ's RFC determination that she should be limited to occasional

19   overhead reaching as opposed to a general limitation of all reaching to occasional.  According to

20   Jones, the ALJ incorrectly rejected the opinion of examining physician Dr. Pon in favor of

21   nonexamining physicians' opinions.  Pl.'s Mot. 5.  The Commissioner contends that the ALJ

22   properly considered Dr. Pon's medical evidence, balanced it against the nonexamining physicians'

23   opinions, and correctly favored the nonexamining physicians.  Def.'s Cross Mot. 4.  The

24   Commissioner argues that the ALJ's limitation to only occasional overhead reaching rather than

25   reaching in all directions is because Dr. Pon's opinion was ambiguous.  Def.'s Cross Mot. 4-5.

26        The opinion of an examining physician is entitled to greater weight than the opinion of a

27   nonexamining physician.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Where the

28   opinion of an examining physician is contradicted, the Commissioner must provide "clear and

7

convincing" reasons for rejecting that opinion.  *Id.*; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.").  Where contradicted by another doctor, the opinion of an examining doctor can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Bayliss*, 427 F.3d at 1216.  The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining physician.  *Lester*, 81 F.3d at 831.

Dr. Pon stated "reaching should be limited to occasionally" in his functionality assessment evaluation of Jones on February 1, 2012.  AR 337.  However, the nonexamining physicians in Jones' Initial Disability Determination Transmittal (dated February 28, 2012) and Reconsideration Disability Determination Transmittal (dated October 2, 2012) both opined that "overhead reaching [should be] limited due to limited ROM and [bilateral] shoulder pain."  AR 59, 74.  Beyond Dr. Pon's and the nonexamining physicians' opinions, there is no other evidence in the record that opine as to whether Jones' should be limited to all reaching or merely overhead reaching occasionally.

*King v. Colvin*, 2015 WL 1870755, Case No. 14-cv-02322-JSC (N.D. Cal. April 23, 2015) is on point for this issue.  As in Jones' case, the plaintiff in *King* alleged disability on the basis of shoulder and knee pain.  2015 WL 1870755 at *2.  Dr. Pon was also the agency examining physician.  *Id.* at *5.  He opined that "There are no limitations in claimant's ability to perform using her left shoulder.  Reaching using her right shoulder should be limited to occasionally. . . ." *Id.*  Of the two nonexamining agency physicians, one reported that the plaintiff was limited to reaching in all directions, and one found that "Plaintiff's overhead reaching was limited to occasional for the upper right extremity."  *Id.* at *6 (internal quotations and brackets omitted).  Also in the record was the report of a treating physician who opined that the plaintiff should be limited to occasional reaching.  *Id.* at *7-8.  Similar to the present case, the ALJ in *King* found in his RFC determination that the plaintiff could "occasionally reach *overhead* with her right arm," agreeing with the nonexamining physicians and rejecting the examining and treating physicians'

8

opinions.  *Id.* at 10 (emphasis added).  The court in *King* held that

> [T]he ALJ's adoption of [the nonexamining agency physician's] opinion regarding overhead reaching is based only on purported corroboration with the examination and analysis of Dr. Pon.   But Dr. Pon's opinion does not support the limitation that [the nonexamining physician] recommended; while [the nonexamining physician] opined that Plaintiff's *overhead* reaching should be limited to occasional, after examining Plaintiff and noting a limited range of movement, Dr. Pon concluded that "[r]eaching using her right shoulder should be limited to occasionally"—all reaching, not overhead reaching only.   Dr. Pon's report did not include any language specifying that only *overhead* reaching should be limited. Notably, Dr. Pon's opinion was in narrative form, not checkbox form, so he could have included any details on limitations that he thought appropriate.  In the written decision, the ALJ acknowledged that "[a]lthough Dr. Pon may have intended the same limitation to overhead reaching only, his statement is less specific."   And at the hearing, the ALJ candidly admitted that he did not know what Dr. Pon meant in his report—*i.e.,* whether he was "only limiting it to overhead reaching" or reaching in all directions.   This distinction is important, as the VE testified that if reaching in all directions was limited to occasional, Plaintiff would not be able to perform any prior relevant work, as all three positions required reaching at frequent.   Nevertheless, the ALJ's written opinion seems to jump to the conclusion that Dr. Pon must have meant overhead reaching only.  But an ALJ is not permitted to read into a doctor's opinion language and limitations that do not appear.  Thus, Dr. Pon's opinion limiting all reaching to occasional is not consistent with [the nonexamining physician's] recommended limitation of overhead reaching only.  Because neither the record evidence the ALJ highlighted nor Dr. Pon's opinion support [the nonexamining physician's] opinion limiting Plaintiff only to *overhead* reaching and not reaching in all directions, the ALJ erred in rejecting the treating and examining physicians' opinions based on the opinion of a nonexamining, consulting physician alone.

*Id.* at 18 (internal citations omitted).

Here, as in *King*, Dr. Pon's report did not include any language specifying that only overhead reaching should be limited, despite also being in narrative form.  AR 337.   However, the Commissioner argues that because "at best, Dr. Pon's limitations were ambiguous," this Court should uphold the ALJ's decision to limit Jones to only overhead reaching.  Def.'s Cross-Mot. at 5-6.  That characterization is factually and legally incorrect.  Dr. Pon's evaluation was in narrative form and plainly does not include a qualification that only overhead reaching should be limited to occasionally.  AR 335-338.  Moreover, if an ALJ thinks he needs to know more about the basis of

United States District Court
For the Northern District of California

a doctor's opinions in order to resolve ambiguity, he has a duty to conduct an appropriate inquiry, for example, by subpoenaing the physician or submitting further questions to him or her. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). The ALJ errs when he rejects a medical opinion as unsupported or ambiguous without fulfilling this duty. *King*, 2015 WL 1870755 at *13, *see also, e.g., Held v. Colvin*, Case No. 13-cv-05803-NC, 2015 WL 926282 at *5-6 (N.D. Cal. Mar. 2, 2015) (remanding based on ALJ's error in rejecting a treating physician's opinion on the ground that the physician's opinion was insufficiently explained or supported, where the ALJ did not inquire further into the basis of the physician's opinion); *Kruger v. Colvin*, Case No. C-12-5820 EMC, 2013 WL 4247340, at *4 (N.D. Cal. Aug 29, 2013) ("Given the ambiguity with respect to the opinion of [a physician], the ALJ should have contacted [the physician] for clarification." (citations omitted)).

Therefore, as in *King*, the ALJ erred in rejecting Dr. Pon's opinion that all reaching should be limited in favor of the nonexamining physicians' opinions that only overhead reaching should be limited. AR 16-17, 337. Because the ALJ erred in adopting the opinion of nonexamining physicians contrary to the opinion of an examining physician, this Court should remand for further administrative proceedings. Even if this Court agrees with the Commissioner that Dr. Pon's opinion was ambiguous, it should still remand for further administrative proceedings to elucidate whether he intended to limit all reaching or merely overhead reaching. The ALJ erred in construing the perceived ambiguity of Dr. Pon's opinion in favor of the nonexamining physicians' opinions. The proper procedure for resolving ambiguity in this regard is to conduct an inquiry; the ALJ should have inquired as to whether Dr. Pon intended to limit Jones' reaching in all directions to occasionally, or merely overhead reaching.

In an independent argument, the Commissioner contends that pushing, pulling, lifting, carrying, and hand manipulation "all represent forms of reaching" and therefore limiting Jones to occasionally reaching in all directions "is not reasonably suggested by Dr. Pon's full functional capacity assessment." Def.'s Cross-Mot. at 4. However, reaching is a separate category of physical limitation from pushing, pulling, lifting, carrying, and hand manipulation for RFC purposes; various categories of physical limitations should not be conflated under the SSI Code.

1   20 C.F.R. § 416.945 ("When we assess your physical abilities, we first assess the nature and extent

2   of your physical limitations and then determine your residual functional capacity for work activity

3   on a regular and continuing basis. A limited ability to perform certain physical demands of work

4   activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical

5   functions (including manipulative or postural functions, such as reaching, handling, stooping or

6   crouching), may reduce your ability to do past work and other work.").  Therefore, this

7   independent argument is without merit.

8   B.    Jones' Mental Limitations

9        Jones argues that the ALJ erred by failing to include any of Jones' mental limitations in his

10  RFC assessment other than her limitation to simple, unskilled work.  Pl.'s Mot. at 9-10; AR 14.

11  She contends that the ALJ's failure to take into account Dr. Dixit's full evaluation of Jones'

12  mental impairments warrants remand for further administrative proceedings.  Pl.'s Mot. at 9-10;

13  AR 332-333.  The Commissioner argues first that the ALJ properly considered Dr. Dixit's

14  opinion, weighed it against the nonexamining physicians' opinions and the rest of the record, and

15  correctly concluded that Jones had no mental limitations beyond being limited to unskilled work.

16  Def.'s Cross Mot. at 7-8.  The Commissioner argues in the alternative that the record indicates

17  Jones' anxiety and limitations in interacting with the public arise from physical contact with others

18  as a result of her prior physical assaults.  Def.'s Cross Mot. at 8.  As such, the Commissioner

19  argues that the ALJ properly concluded Jones could perform previous work as a telemarketer or

20  contributions solicitor because her contact with the public would be limited to talking on the

21  telephone.  Def.'s Cross Mot. at 8-9.

22       Dr. Dixit reported that Jones had mild-moderate impairments in her ability to follow and

23  remember complex instructions, to maintain adequate pace or persistence to perform complex

24  tasks, to withstand the stress of a routine work day, to maintain emotional stability/predictability,

25  and to interact with the public on a regular basis; Jones also had mild impairments in her ability to

26  maintain adequate attention/concentration, to adapt to changes in job routine, to interact

27  appropriately with co-workers, and to perform tasks requiring mathematical skills.  AR 332-333.

28  It is in contrast to the nonexamining physicians' assessment of Jones' mental impairments.  The

nonexamining physicians only noted moderate limitations in Jones ability to carry out detailed instructions and interact appropriately with the general public. AR 61, 77. They also noted moderate limitation in her general ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 60-61, 76-77. The nonexamining physicians noted no other significant mental limitations.

Jones' sole treating mental health specialist, Ms. Beyer, opined that Jones suffered from such extreme mental impairments that she is incapable of even "low stress" jobs. AR 357. However, because Ms. Beyer is a Licensed Marriage and Family Therapist ("LMFT"), the ALJ correctly gave her opinion little weight in his determination. *Morales v. Colvin*, No. SACV 12-1740-OP, 2013 WL 2237964, at *5 (C.D. Cal. May 21, 2013) ("The Court notes that a licensed marriage and family therapist ('LMFT') is not considered an acceptable medical source under the Social Security Regulations."); *see also* 20 C.F.R. §§ 404.1502, 404.1513.

In the ALJ's initial assessment of Jones' mental health in his decision, he made several misstatements of the record. The ALJ twice claimed that "[Jones] said that she does not need special reminders to take care of her personal needs and grooming. . . [and] she does not need help or reminders in taking her medication, preparing meals." AR 13, 16. However, the record indicates specifically that Jones does need special reminder to take care of personal needs and grooming, she does need special help or reminders taking medicine, and that she does need help or encouragement to do household chores. AR 205. In her application for SSI benefits, Jones completed a Function Report questionnaire, dated Nov. 9, 2011. AR 203-211. Question 12(b) asked "Do you need any special reminders to take care of personal needs and grooming?" Jones checked the "yes" box. AR 205. Question 12(c) asked "Do you need help or reminders taking medicine?" Jones checked the "yes" box. AR 205. Question 14(a) asked Jones to "List household chores, both indoors and outdoors, that you are able to do." Jones answered "I don't have a stable living space, I try to cook and clean where ever I am." AR 205. Question 14(c) asked "Do you need help or encouragement doing these things?" Jones checked the "yes" box.

1   AR 205.[4]

2       Dr. Dixit diagnosed Jones with the litany of mental limitations noted above, but the

3   nonexamining physicians did not.  They only opined that the limitation to simple, unskilled work

4   was her ONLY mental limitation.  Although the ALJ detailed Dr. Dixit's findings in his decision,

5   the ALJ did not include any of her diagnoses of Jones' mental impairments in his RFC assessment.

6   AR 15-17.  Instead, the ALJ followed the nonexamining agency physicians' opinion that Jones be

7   limited to simple, unskilled work without further mental limitations.  AR 15, 61, 76.  He did not

8   provide specific reasons for failing to follow Dr. Dixit's recommendation.  The ALJ erred in

9   favoring the nonexamining physicians' opinions over the examining physician's without providing

10  clear and convincing reasoning for doing so.  *See Lester*, 81 F.3d at 830.

11      The Commissioner incorrectly relies on *Hoopai v. Astrue* in her argument that the Ninth

12  Circuit has held similar limitations (*e.g.*, "ability to maintain attention and concentration for

13  extended periods; his ability to perform activities within a schedule, maintain regular attendance,

14  and be punctual with customary tolerance; and his ability to complete a normal workday and

15  workweek without interruption from psychologically-based symptoms and to perform at a

16  consistent pace without an unreasonable number and length of rest periods mental limitations") to

17  Jones' "are not evidence of disabling limitations."  499 F.3d 1071, 1076 (9th Cir. 2007); Def.'s

18  Cross Mot. at 7.  *Hoopai*, unlike the present case, however, dealt entirely with step five analysis.

19  499 F.3d at 1075.  *Hoopai* is inapposite.  If a claimant can prove a prima facie case of disability

20  (steps 1-4), then the burden shifts to the Agency to demonstrate that the claimant can still perform

21  a significant number of jobs in the national economy.  The decision is made on the basis of four

22  factors: claimant's RFC, age, work experience, and education.  To assist in the determination, the

23  SSA established the Medical-Vocational Guidelines (aka "the grids"), which consist of a matrix of

24  the four factors and set forth rules that identify whether jobs requiring a specific combination of

25  these factors exist in significant numbers in the national economy.  *Hoopai* focused solely on this

26

27  ────────────────

28  [4] Moreover, in nearly every medical report, the treating physicians noted that Jones was displaying obvious signs of anxiety and/or PTSD during their examinations.  *See* AR 288, 291, 303, 306, 428, 433, 462, 466, 467.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   step-five determination of whether a significant number of jobs existed that the claimant could

2   perform.  The claimant took issue with the fact that the ALJ did not employ a vocational expert's

3   assistance when he applied the grids to the claimant's case.  The 9th Circuit held that the ALJ did

4   not need a VE's assistance to use the grids.  Therefore, it really has nothing to do with Jones'

5   situation.  Moreover, the Court's actual holding was that "[the claimant's] depression was not a

6   sufficiently severe non-exertional limitation that prohibited the ALJ's reliance on the grids [a step

7   five tool for evaluating claimants' job potential in the national economy] without the assistance of

8   a vocational expert."  *Hoopai*, 499 F.3d at 1076.  Therefore, the Commissioner's reliance on

9   *Hoopai* is without merit.

10          The Commissioner argues in the alternative that "Plaintiff's interactions with the public

11  were significantly reduced because Plaintiff would only have telephone contact with persons" and

12  that "the record reasonably shows that Plaintiff's anxiety in dealing with the public arises from

13  their physical presence. . . ."  Def.'s Cross-Mot. at 8.  As evidence for this contention, the

14  Commissioner first offers the medical record of one of Jones' hospital stays for sexual and

15  physical assault.  AR 302-305; Def.'s Cross Mot. at 6.  This medical record details Jones' physical

16  trauma and provides a prescription for anti-anxiety medication, but makes no statement about

17  Jones' mental condition and does not imply that physical presence will trigger future panic attacks.

18  AR 302-305.  The Commissioner relied on this medical record to show that physical presence

19  triggers Jones' anxiety attacks, but nothing in the medical record indicates such.

20          Second, the Commissioner proffered a letter from Ms. Beyer, a LMFT and Jones' sole

21  treating mental health specialist.  AR 277; Def.'s Cross-Mot. at 8.  The letter diagnoses Jones with

22  PTSD and generalized anxiety disorder, and details that Jones has been generally unstable with

23  PTSD symptoms since her domestic abuse.  AR 277.  However, the letter does not mention or

24  imply that only physical presence would trigger Jones' PTSD.  Moreover, as a LMFT, Ms.

25  Beyer's opinion is afforded very little weight.  *Morales*, 2013 WL 2237964, at *5 ("The Court

26  notes that a licensed marriage and family therapist ('LMFT') is not considered an acceptable

27  medical source under the Social Security Regulations."); *see also* 20 C.F.R. §§ 404.1502,

28  404.1513.

14

Finally, the Commissioner offers Jones' testimony at the hearing that at a potential future job, a supervisor startling her from behind likely would trigger a panic attack.  AR 39-40; Def.'s Cross-Mot. at 8.  However, this testimony does not imply that only the physical presence of others and nothing else would trigger panic attacks, and the ALJ did not investigate further as to whether nonphysical contact with others would cause Jones anxiety or panic attacks.  Moreover, none of Jones' other treating, examining, or nonexamining physicians ever qualified Jones' impairment in interacting with the public to mean only "physical contact with the public."

As such, substantial evidence does not support the ALJ's determination that Jones' RFC only included a limitation to unskilled work without further mental limitations.  The ALJ erred in rejecting Dr. Dixit's opinion in favor of the opinions of the nonexamining physicians.

C.     Harmless Error Review

A reviewing court cannot consider an error harmless unless it can conclude confidently that no reasonable ALJ, when properly crediting the testimony, could not have reached a different disability determination.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1051 (9th Cir. 2006).  An error is harmless only if it is "inconsequential to the ultimate nondisability determination."  *Id.*

The ALJ's errors regarding Dr. Pon's and Dr. Dixit's opinions were not harmless.  The ALJ's step four decision rests upon Jones' ability to perform her past relevant work with the assumption made by the ALJ about her RFC.  AR 16-17, 43-44 (light work; lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand, and walk 6 hours; push/pull frequently; occasionally performing postural activities; occasional reaching overhead bilaterally, limited to simple, unskilled work).  There is no VE testimony that Jones could perform her past relevant work with any further physical or mental limitations.  In fact, the VE testified that if Jones had any further limitations beyond the ALJ's initial hypothetical that she would be unable to perform any of her past relevant work.  AR. 44-47.  Hence, a finding of any other limitations would likely be consequential.

As for the difference between overhead reaching versus reaching in all directions, the distinction is not harmless here because the VE at the hearing never testified as to whether Jones could perform her past work if *all* reaching were limited to occasionally.  AR 43-45.  Further

United States District Court
For the Northern District of California

1    administrative proceedings are necessary to determine whether Jones can perform her past relevant

2    work if all reaching were limited to occasionally.  *See King*, 2015 WL 1870755 at *18.

3          As to Jones' mental limitations, in each of the ALJ's hypotheticals to the VE, the ALJ did

4    not include any limitations beyond "limited to simple, unskilled work."  AR 43-45.  Had the VE

5    been allowed to consider Jones' mild-moderate impairment in her ability to interact with the

6    public on a regular basis, he might not have approved Jones for work as a telemarketer because of

7    the job's high level of interaction with the public.  *See* DOT No. 299.357-014. ("Telephone

8    solicitor calls prospective customers to explain type of service or merchandise offered.  Quotes

9    prices and tries to persuade customer to buy, using prepared sales talk. Records names, addresses,

10   purchases, and reactions of prospects solicited.  Refers orders to other workers for filling.").

11   Moreover, the VE testified that someone who had mental impairments consistent with Dr. Dixit's

12   opinion regarding panic attacks and a limited ability to interact with the public would not be

13   employable in the general economy.  AR 45-47.

14         Thus, the ALJ's rejection of examining physicians Dr. Pon's and Dr. Dixit's opinions of

15   Jones' limitations cannot be said to be harmless and warrants remand for further administrative

16   proceedings.  *See Widmark v. Barnhart*, 454 F.3d 1063, 1069-1070 (9th Cir. 2006) (holding that

17   improper rejection of an examining physician's opinion constituted harmful error, and remanding

18   for further administrative proceedings).

19   D.    The ALJ's Step Four Decision

20         Finally, Jones contends that assuming, *arguendo*, substantial evidence does support the

21   ALJ's RFC assessment, this Court should still remand for further administrative proceedings

22   because the ALJ erred in his step four finding that Jones could perform her past relevant work.

23   Pl.'s Mot. at 11-14; AR 16-17.   At step four, the ALJ must determine whether, given the

24   claimant's RFC, the claimant can still do his or her past relevant work either as the claimant

25   actually performed it or as generally performed in the national economy.[5]  *Molina v. Astrue*, 674

26

27   [5] Work "as actually performed" refers to the method in which the claimant actually performed her
     job, regardless of how the DOT describes how the job should be performed; work "as generally
28   performed" refers to the DOT's description of how a specific job is performed.  20 C.F.R. §§
     404.1520(a), 416.920(a).

F.3d 1104, 1110 (9th Cir. 2012); 20 C.F.R. §§ 404.1520(a), 416.920(a).   She asserts that the VE testified that her past relevant work was a composite of two positions: contributions solicitor and telemarketer.  Pl. Mot. at 13.  When a claimant's past relevant work is a composite of two or more separate occupations, he or she does not have past relevant work as generally performed in the national economy.  *Program Operations Manual System ("POMS")*, § DI 25005.020(B) ("When comparing the claimant's RFC to a composite job as it was performed, find the claimant capable of performing the composite job only if he or she can perform all parts of the job.  A composite job will not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'").  Therefore, the ALJ would have to rely only on Jones' work as it was actually performed and conclude she could perform all parts of the jobs..  Jones claims that the ALJ erred in failing to develop the record or gather evidence from Jones herself as to how she actually performed her past work.  Pl. Mot. at 13.  Thus, she argues this Court should remand for further administrative proceedings to develop the record and determine whether she can perform her past work as actually performed.

The Commissioner contends that the VE did not testify that Jones worked a composite job.  Def.'s Cross-Mot. at 9.  Rather, the Commissioner contends that the VE's discussion of the difference between a contribution solicitor and telemarketer focused upon whether one would be going door-to-door soliciting funds.  Def.'s Cross-Mot. at 9; AR 42, 44-46.  Instead of considering Jones' past work as a composite job, the Commissioner argues that the VE drew comparisons of both positions and concluded that the skills, exertional levels, and ultimate duties were the same.  As to the development of the record, the Commissioner claims that the ALJ did gather sufficient evidence from Jones and the VE to make an informed decision.  Def.'s Cross Mot. at 9-10.

Substantial evidence supports the Commissioner's characterization of the VE's testimony.  VE testified that Jones has past relevant work as an office clerk (DOT No. 209.562-010, semi-skilled, SVP 3, light level of exertion), contribution solicitor (DOT No. 293.357-014, unskilled, SVP 2, light level of exertion), and telemarketer (DOT No. 299.357-014, semi-skilled, SVP 3, sedentary level of exertion).  AR 17, 41-44.  When presented with a hypothetical analogous to Jones' RFC, the VE testified that Jones could perform work as a contribution solicitor and

17

United States District Court
For the Northern District of California

telemarketer as actually performed.  AR 44.  The VE did not testify that Jones worked a composite position or that she required the skills of both a contribution solicitor and telemarketer.  An ALJ is entitled to draw inferences logically flowing from the evidence to make his determination.  *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).  Here, the ALJ correctly determined, assuming his RFC assessment was accurate, that Jones could perform her past relevant work.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, this Court should remand Jones' case for further administrative proceedings.

This order disposes of Docket No. 17.  The Clerk is instructed to enter judgment, close the file, and remand the case to the Administrative Law Judge.

**IT IS SO ORDERED**.

Dated:  October 13, 2015

_____
EDWARD M. CHEN
United States District Judge